UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| ELLSWORTH H. TURNER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3: 10-39-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| KENTUCKY TRANSPORTATION CABINET, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Kentucky Transportation Cabinet's ("Cabinet") Motion for Summary Judgment. [Record No. 64] The Cabinet argues that it is entitled to summary judgment because Plaintiff Ellsworth Turner's claims are barred by collateral estoppel and because they are otherwise without merit. For the reasons set forth below, the Cabinet's motion will be granted.[1]

**I.**

Turner has been employed by the Kentucky Department of Transportation for a number of years. Since June 2006, he has held the position of Acting Branch Manager. [Record No. 1,

---

[1] On July 22, 2013, the Court granted Turner additional time to respond to the Cabinet's Motion for Summary Judgment. [Record No. 72] Despite this extension, Turner has failed to respond to the motion within the time allowed. Therefore, the Court will proceed without the benefit of a response.

-1-

p. 3] Turner was supervised Steve Damron during the time relevant to this action.[2] On March 10, 2008, Turner filed a complaint with the Cabinet's Civil Rights Compliance Branch, alleging that Damron had sexually harassed him. [Record No. 1, p. 4] Turner asserted that, in May 2008, Damron prevented him from obtaining the position of permanent branch manager.[3] Turner then filed complaints of sex discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and the Kentucky Commission on Human Rights ("KCHR") on May 14, 2008 and January 12, 2009, respectively. [*Id.*, p. 4] On March 13, 2009, Turner filed an appeal pursuant to KRS Chapter 18A with the Kentucky Personnel Board, alleging retaliation against Damron and procedural deficiencies regarding his 2008 employee evaluation.[4] Following a two-day evidentiary hearing, the Personnel Board hearing officer issued Recommended Findings of Fact and Conclusions of law. [Record No. 64-3]

---

[2]On January 20, 2011, Damron was dismissed from this action because Turner failed to properly serve him.

[3]Specifically, Turner alleges that:

[t]his is an action for compensatory, special and punitive damages that resulted from the discriminatory and malicious acts by the Defendants to deprive Plaintiff of the rights and privileges of employment, specifically, promotion to the position of Branch Manager in the Division of Right-of-Way in retaliation for filing a complaint of sex discrimination against his supervisor, Steve Damron, thereby depriving him of liberty and property and the right to enjoy life without due process of law in violation of the Fourteenth Amendment to the United States Constitution and Section 1 of the Kentucky Constitution.

[Record No. 1, p. 2]

[4]Turner alleges in his appeal to the Personnel Board that Damron made sexual comments or advances toward him in 2007. Damron denied that these incidents occurred.

The Personnel Board adopted the Recommended findings and conclusions with some modifications. By final order dated April 13, 2011, the Personnel Board determined that Turner's retaliation claims were unfounded. It also found that Turner's 2008 evaluation (performed by Damron) did not comply with applicable regulations and should be removed from his personnel file. Turner appealed the Personnel Board's decision to the Franklin Circuit Court. The Cabinet represents that the appeal has been fully briefed and has been submitted to the Franklin Circuit Court for a final decision.

The EEOC issued "Right to Sue" letters on March 30, 2010. Turner filed the current action after receiving these letters. In this Complaint, Turner asserts claims of retaliation under Title VII under the Civil Rights Act of 1964 and the Kentucky Civil Rights Act.[5] He repeats his allegation that he was denied a promotion for refusing Damron's sexual advances and for filing a sexual harassment complaint against Damron.

## II.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine"

---

[5] The Complaint also generally references 42 U.S.C. § 1983 and Section 1 of the Kentucky Constitution. Insofar as Turner has cited § 1983 and the Kentucky Constitution, the Cabinet argues that it is entitled to summary judgment because the claims are barred by governmental immunity. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58 (1989); *Shelbyville Road Shoppes, LLC v. Commonwealth of Ky. Transp. Cabinet,* 486 B.R. 848 (W.D. Ky. 2013). However, simply citing to the Kentucky Constitution does not create a claim under it. Accordingly, the Court finds that this passing reference does not warrant further consideration.

unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986); *see Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

A party moving for summary judgment bears the burden of showing conclusively that no genuine issue of material fact exists. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). Once the moving party has met its burden of production, the nonmoving party must present "significant probative evidence" of a genuine dispute in order to defeat the motion for summary judgment. *Chao*, 285 F.3d at 424. The nonmoving party cannot rely upon the assertions in its pleadings; rather, it must come forward with probative evidence, such as sworn affidavits, to support its claims. *Celotex*, 477 U.S. at 324. In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

## III.

### A. Preclusive Effect

The Cabinet initially argues that Turner's retaliation claims are precluded by the Personnel Board's findings that Turner was not retaliated against by the Cabinet and because the Personnel Board found that he suffered no loss of pay, was fairly assigned duties within his position, and failed to make himself eligible for the position he claims to have been unfairly

denied. [Record No. 64-3, p. 18] "[W]hen a state agency acting in a judicial capacity resolves disputed issues of fact properly before which the parties have had an adequate opportunity to litigate, federal courts must give the agency's fact finding the same preclusive effect to which it would be entitled in the State's courts." *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986) (internal citation and quotations omitted). However, "Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims." *Id.* at 796.

The established rule "requires federal courts to give preclusive effect to state court judgments whenever the courts of that state would do so." *Bray v. New York Life Ins.*, 851 F.2d 60, 62 (2d. Cir. 1988). Applying collateral estoppel principles, once an issue of fact or law has been determined that is necessary to its judgment, that decision may preclude litigation of the issue in a later suit. *San Remo Hotel, L.P. v. City and Cty of San Franciso, Cal*, 545 U.S. 323, 336 (2005). The rule serves the "sound policy" to apply principles of claim preclusion to the fact-finding of administrative bodies acting in a judicial capacity. *Elliot*, 478 U.S. at 797. Applying preclusion to state administrative bodies "encompasses both the parties' interest in avoiding the cost and vexation of repetitive litigation and the public's interest in conserving judicial resources" and "serves the value of federalism." *Id.* Because Turner's claim has not yet been reviewed by the Franklin Circuit Court, it does not yet have preclusive effect on the Title VII claim. *Id.* at 799. However, the same does not necessarily hold true for Turner's state law claim.

The Cabinet argues that *McKissic v. Commonwealth of Kentucky. Transportation Cabinet*, 334 S.W.3d 885 (Ky. Ct. App. 2010), is controlling regarding the issue of whether a

Kentucky court would give the Personnel Board's findings "preclusive effect." In *McKissic*, the Kentucky Court of Appeals explained that KRS Chapter 18A — the administrative appeal provision utilized by Turner — does not create duplicative remedies for an employee alleging employment discrimination. Instead, a "civil rights claimant[] must elect between potential remedies." 334 S.W.3d at 890. Although *McKissic* is not precisely on point because it concerns only Kentucky Civil Rights Act claims brought in state court, it does illustrate Kentucky law regarding the election of remedies by a state employee asserting employment discrimination. *Id.* (noting that allowing an employee "to choose between local or state administrative remedies and then still have the option of judicial relief" would be "absurd."). In affirming the dismissal of the employment discrimination claims, the *McKissic* court found that allowing the plaintiff to pursue judicial relief after an administrative appeal to the Personnel Board was dismissed following an evidentiary hearing "would allow [] two bites at the proverbial apple" and "also would have the 'absurd' result of allowing both judicial and administrative relief even though such multiple options would not have been available if he had initiated his claims in a different order." *Id.*

Turner's claim of retaliation has been fully and fairly litigated according to the administrative appeal process with the Personnel Board. [*See* Record No. 64-3, p. 1.] The KRS Chapter 18A proceeding involved the same parties and the same grievance that Turner seeks to assert in this case. As a result, he is barred from attempting to relitigate it in this forum while using Kentucky law as the basis for his claims. Declining to give the Personnel Board's findings any effect would be contrary to the holding that federal courts must give a state agency acting

in a judicial capacity the same preclusive effect it would have in the courts of that state. Elliott, 478 U.S. at 797. If Turner had attempted to bring his Kentucky retaliation claim in Kentucky state court, *McKissic* dictates that his claim would be precluded because the findings of the Personnel Board would be adopted. Under *Elliott*, the decision of the Personnel Board is entitled to preclusive effect in this Court as well. Thus, his retaliation claim under Kentucky law cannot proceed.

However, because his appeal to the Franklin Circuit Court has not yet been reviewed, Turner's Federal Title VII claim is not precluded under *Elliott*. 478 U.S. at 799 ("Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims."). Accordingly, that claim will be reviewed on its merits.

### B.    Title VII[6]

The Cabinet also asserts that, even if Turner's retaliation claims are not precluded, it is entitled to summary judgment because the claims are without merit. Having submitted no response or other sources of proof, the Court will rely on statements contained in Turner's pleadings and the parties' other filings. *See Celotex*, 477 U.S. at 324. In his Complaint, Turner alleges that Supervisor Damron intentionally allowed the personnel registry to expire "to prevent [Turner] from getting the job in retaliation for Plaintiff's having refused his sexual advances and filing a sexual harassment complaint against him with the 'Cabinet's' Civil Rights Compliance

---

[6]Even if the Kentucky retaliation claim was not precluded, the plaintiff has asserted nearly identical facts for both claims. Accordingly, even if the Kentucky retaliation claim was not precluded, summary judgment would be appropriate for the reasons outlined below.

Branch on or about March 10, 2008." [Record No. 1, p. 4] Turner argues that this action was a violation of Title VII of the Civil Rights Act of 1964.

Title VII forbids an employer from discriminating against an employee because that individual opposed any practice made unlawful from Title VII, or made a charge, testified, assisted, or participated in a Title VII proceeding or investigation. *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 56 (2006) (citing 42 U.S.C. § 2000e-2(a), 3(a)). To establish a *prima facie* case of Title VII retaliation, a plaintiff must demonstrate by a preponderance of the evidence:

> (1) that plaintiff engaged in an activity protected by Title VII; (2) that the exercise of his civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action.

*Hollins v. Atl. Co., Inc.*, 188 F.3d 652, 661 (6th Cir. 1999) (internal citation and quotation marks omitted).[7]

There is no dispute regarding whether Turner engaged in protected activity by filing the sexual harassment complain on March 10, 2008, and that the Cabinet knew about the exercise of that right. The issue is, then, whether Turner has established that the Cabinet took an employment action adverse to Turner and whether that action was causally connected to the March 10, 2008 complaint. The United States Supreme Court has recently held that in a claim

---

[7]Title VII retaliation claims based on circumstantial evidence are analyzed under the McDonnell-Douglas burden shifting framework. *Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 514-15 (6th Cir. 2003). Once the plaintiff has made out a *prima facie* case of retaliation, the burden shifts to the defendant to demonstrate a legitimate, nondiscriminatory reason for the adverse action. *Id.* If the defendant produces such a reason, the plaintiff then assumes the burden of showing that the defendant's reasons were merely a pretext for discrimination. *Id.*

for retaliation, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse which, in this context, means it would have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Burlington N.,* 548 U.S. at 56. Title VII only protects an employee "from retaliation that produces an injury or harm." *Id*. at 67.

The Cabinet has adequately shown that no genuine issue of material fact exists regarding whether any adverse employment action occurred because Turner filed the sexual harassment claim. Further, it has adequately shown that, even if there was an adverse employment action, Turner has not causally linked the action to his act of filing the sexual harassment complaint. Here, Turner alleges that he suffered injuries because he was not promoted. Further, his retaliation claim with the Personnel Board complained that his duties were reduced and that his employee evaluation was done unfairly.[8]

Regarding the employee evaluation complained of to the Personnel Board — notwithstanding the fact that the evaluation was a positive evaluation — the Personnel Board already determined that the evaluation should be removed from Turner's file because it was not conducted in accordance with regulations.[9] Turner has failed to show that he has suffered any

---

[8]Because Turner has not responded, the Court must look to his Personnel Board proceeding to determine Turner's position regarding his retaliation claim. [*See* Record No. 64-3.] Although Turner was removed as acting branch manager, this was due to a Cabinet-wide directive more than a year prior to submitting any complaints of discrimination. Under this time line, the Cabinet could not have retaliated against Turner for a complaint that he had not yet made, and the "thereafter" requirement is defeated regarding this action. *Hollins*, 188 F.3d at 661.

[9]Because the employee evaluation was actually a "good" evaluation, the Cabinet also argues that it cannot serve as the basis for a retaliation claim. [Record No. 64-1, p. 7 (*citing Hollins*, 188 F.3d at 662)]

injury or harm, or that such injury or harm was causally connected to his filing a complaint alleging that Damron had sexually harassed him. In adopting the objective standard for determining harm, the Supreme Court sought to "filter out" complaints like Turner's that essentially allege "personality conflicts at work that generate antipathy and snubbing by supervisors."[10] *Burlington N.*, 548 U.S. at 68 (internal citation and quotation marks omitted).

Finally, the Court reaches the crux of Turner's Title VII claim: that he was prevented from being promoted in retaliation for filing a sexual harassment claim. [Record No. 1] Turner's retaliation claim is deficient because he has failed to show that not receiving the promotion was causally connected to the protected activity of reporting sexual harassment. In his Complaint, Turner alleges that Damron "intentionally allowed the [position] registry to expire to prevent [Turner] from obtaining the position, despite having told him as early as March 30, 2006, that he would become the permanent branch manager." [Record No. 1, p. 4] However, the position that Turner claims to have been unlawfully denied was actually withdrawn because of a state-wide hiring freeze.[11] [Record No. 68, pp. 2-3; Record No. 64-3, pp. 13, 17] When the position was later re-posted on two separate occasions, Turner did not re-apply. [Record No. 64-3, p. 9]

---

[10] The testimony presented during the two-day evidentiary hearing is rife with indications that the working relationship between Turner and Damron was strained, with both men making threatening claims. [Record No. 64-3] Witnesses testified that Turner had promised to ruin Damron's career if he did not receive the promotion. Other witnesses recalled a hostile lunch meeting during which Damron used profanity and became angry with Turner.

[11] Turner apparently admitted during his testimony in the evidentiary hearing that on or about March 12, 2007, the Commissioner distributed a memo abolishing all "acting" positions until the permanent positions could be posted and advertised for filing. [Record No. 64-3, p. 2]

Thus, even assuming an adverse employment action had been shown, Turner has failed to demonstrate that he did not receive promoted because of his sexual harassment claim. He has therefore not met the "but for" causation test because there is no showing that the harm of not receiving the promotion would not have occurred but for his act of filing a complaint. *Univ. of Texas Southwestern Medical Center v. Nassar*, 570 U.S. ___ (2013) (adopting the higher standard of "but for" causation under Title VII's anti-retaliation provision). Viewing the facts in the light most favorable to Turner, there is no dispute that he did not receive the promotion because it was withdrawn due to a hiring freeze. No other employee received the position at that time. In short, Turner has not established that the Cabinet withdrew the position because he filed an internal sexual harassment complaint. The two events are not causally connected, and Turner asserts no facts to link them. Then, when the position was later re-posted, Turner did not take further steps to apply for the promotion. *Id.* In that instance, the reason that he did not obtain the promotion was similarly clear — he did not apply for it.

Apart from Turner's bald assertions, there is no evidence that Damron or the Cabinet somehow caused the position to expire or prevented Turner from seeking the position he desired. Rather, the statements in the Complaint are unsupported allegations with no probative evidence behind them. *See Bickerstaff v. Vassar College*, 196 F.3d 435, 452 (2d. Cir. 1999) ("Statements that are devoid of any specifics but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment."); *see also* Fed. R. Civ. P. 56(e) (the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial.") The Cabinet has met its burden of showing that there is no genuine issue of material fact regarding Turner's

claims because Turner has failed to establish a *prima facie* case of retaliation. As such, it is entitled to judgment as a matter of law.

### IV.

For the reasons set forth herein, it is **ORDERED** as follows:

1. Defendant Kentucky Transportation Cabinet's Motion for Summary Judgment [Record No. 64] is **GRANTED**.

2. Plaintiff Ellsworth Turner's Motions to Set Aside Pre-Trial Conference [Record No. 67] and Motion for an Extension of Time to File Response/Reply to Pretrial Memoranda [Record No. 73] are **DENIED**, as moot. The pre-trial conference currently scheduled for **August 14, 2013**, and the bench trial scheduled for **September 3, 2013**, are **CANCELED**.

3. A separate Judgment will be entered this date.

This 13th day of August, 2013.



Signed By:
*Danny C. Reeves* DCR
United States District Judge